UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
       Plaintiff,

vs.                                    Case No.:    14-60163-Cr-WPD

SHAUN MCKINLEY,
       Defendant.
_____/

### ***DEFENDANT'S MOTION FOR NEW TRIAL***

       COMES NOW, Shaun McKinley, by and through undersigned counsel, pursuant to F.R.Cr.P. 33 and respectfully requests this Honorable Court grant him a new trial. As grounds in support Mr. McKinley would state the following:

1.       Mr. McKinley adopts and renews all of his previous motions and objections.

2.       The Court should grant Mr. McKinley a new trial for the following reasons:

       The interests of justice require a new trial. First, there were numerous instances of unnoticed prior 404(b) conduct of Mr. McKinley and his defense witness was that was mentioned before the jury before on several occasions.

       The improper questioning and answers started right from the beginning of the trial. The first witness, Shaquille Antonio, testified to the following during the direct testimony:

Q.       Taking care of business by doing that? (After McKinley had been arrested)

A.	Making sure his girlfriend is all right, making sure I still keep the crack sales going, and stuff like that.

Q.	This is the conversation you had with him.

A.	Yeah.

Q.	And did you do that?

A.	Yeah, I did.

Q.	And where did you obtain the crack from?

A.	The house.

Q.	What house?

A.	Shaun's house.

Q.	The same house that this older make also lived in, Gerry?

A.	Yes, Yes.

T-240, 241.

Q.	Other than that, did you have any further contact with him?

A.	I think I spoke to him about one more time, about the same issue.

Q.	And what did he ask you?

A.	He was – he's – told me where his –what happened to his cocaine?  It was in the Black and Mild box...

T-241.

On cross examination the following testimony occurred:

Q. Do you think in a couple of months, he could have got another girl?

A. Yeah, he – he actually did have another girl for a couple of days.

Q. Oh, he did.

A. Yeah.

T-261.

Q. And outside of this girl, you said, for two, three days, did you seen him with any other girls where he was – that he was – they used the term "pimping" for?

A. No, but there was a couple of customers who would buy from us, like they would give him some money every now and then and tell him to hold it. And, you know, sometimes they would use his room to do a customer and they would break him off a little something. But he wasn't necessarily – they wasn't necessarily his girls.

T-261.

On redirect examination the following testimony occurred:

Q. Now, you told defense attorney just a couple of minutes ago that – based on his questions, that Defendant McKinley had another girl, did you not?

A. Yeah.

T-269

Q. And was this another girl that he was, quote, working?

A. Yeah.

Q. And was it a girl that he was forcing to act as a prostitute?

A. Yes.

Q. And was he taking her money?

A. Yes.

During the government's closing argument the prosecutor highlighted this improper 404(b) testimony:

....by selling drugs and prostituting at least one woman that we know of here, although there's been testimony that there was, in fact, more than one woman.

T-699.

In DE-48, the Government's Notice of Intent to Introduce Inextricably Intertwined Evidence, they reference the fact that they intended to explain Mr. Antonio's relationship with Mr. McKinley was based on the fact that they sold drugs together and that the defense did not oppose this position. However, the fact that Mr. McKinley was still dealing drugs after he was arrested is not in fact inextricably intertwined as the offense had already concluded and is clearly unnoticed inadmissible 404(b) evidence.

Furthermore, even though the response came on cross-examination, evidence of

Mr. McKinley's other alleged prostitutes is clearly inadmissible under both F.R.E. 404(b) and 403.  The prosecutor then highlighted this evidence on redirect and in the closing argument.

Additionally, during the cross-examination of Gerry Viskocil the government goes into more unnoticed and inadmissible 404(b) evidence of both Mr. McKinley and the witness as the following occurred:

Q. That's a fairly notorious address, isn't?  (Referring to the witness's residence)

A. Notorious to who?

Q. To law enforcement?

A. Have they come there before?  Is that what you're saying?

Q. No – well, why don't you tell me, sir.

A. They've come there three different times looking for drugs and never found anything.

Q. Never found any drugs at 1841 Rodman Street; is that what you're telling this jury?

A. What I'm telling – well, do you want to tell them the whole story?

Q. No, sir.  The question is: Have the police ever, pursuant to search warrants, found drugs at 1841 Rodman Street?

A. They found drugs when they planted drugs.

Q. The police planted drugs in your house?

A. Exactly.

Q. Oh, I see.

A. August 8th of 2008.

Mr. Kaufman: Your honor, I'm gonna (sic) object to this. Just because somebody is charged doesn't – I don't think this is proper questioning regarding his criminal activity.

The Court: Let's move on.

T-557, 558.

Q. Sir, how many people per day came to the back of this house for prostitution activities?

A. None that I know of.

Q. How many people per day came to the back of the house and over to the front to buy crack cocaine?

A. None that I know of.

Q. Never happened?

A. Not in the evening, no. I mean it couldn't have happened when I was there, because, like I said, with the two dogs, if anybody came to the house, there (sic) would have been barking like crazy. And I would have seen who was at the door. So nobody was coming in without me knowing it.

Q. Sir, you co-owned a black Lexus with Mr. McKinley, didn't you?

A. How long – how long ago?

Q. Sir, did you ever co-register a 2004 black Lexus with Mr. McKinley?

A. He bought a car. What year it was or what color it was, I don't really know.

Q. Did you ever co-register a car with Mr. McKinley?

A. Yes, I did.

Q. And isn't it a fact, sir, that the police found crack cocaine and a gun in that car?

Mr. Kaufman: Objection, your Honor.

The Court: Sustain.

Mr. Kaufman: I move for a mistrial.

The Court: Denied.

T-558, 559.

Q. Well, you know that Mr. McKinley kept guns in the house.

A. Not that I know of, no.

Q. Guns were seized out of that house.

Mr. Kaufman: Objection, your Honor.

The Court: If he knows.

Q. Guns were seized by the police from Mr. McKinley's bedroom, were they not?

A. When was this? Not that I know of.

Q. In May of 2008, were guns seized from 1841 Rodman Street out of Mr. McKinley's bedroom, were they not?

A. When was this? Not that I know of.

Q. In May of 2008, were guns seized from 1841 Rodman Street out of Mr. McKinley's bedroom?

The Court:   2008?

Mr. Schwartz:   2008.

A. ... Mr. McKinley didn't live there in 2008.

Q. Where did he live?

A. In Hallandale.

Q. And was that an apartment that you maintained?

A. No. That's why I didn't know about the back car, because the black car was in Hallandale at his apartment. That's what I tried to tell you before.

Q. Sir, in 2008, May 14, 2008, you were living with another individual, Eddie Robinson –

A. Correct.

Q. – at 1841 Rodman Street; correct?

A. Correct.

Q. And that's when the police came in and founds guns and drugs?, correct?

A.     No.

Mr. Kaufman:     Objection.

A.     They found guns.  They found a gun.  They found no drugs.

Mr. Kaufman:     He's already answered, so ....

Q.     And on the same date, sir, based on evidence they found there, they then went to the other location in Hallandale and found guns and drugs with Mr. McKinley.

Mr. Kaufman:     Objection, your Honor.

The Court:   Sustain.

Q.     How about August of 2008, do you remember the police coming to 1841 Rodman Street?

A.     Yes, I do.

Q.     Was Mr. McKinley living with you at that time?

A.     No.

Q.     He didn't live there.

A.     No.

Q.     Did the police find his license in the room with the cocaine and the drugs?

A.     Like I said, the only thing –

Mr. Kaufman:     Objection, your Honor.

The Court:   Sustain.

Mr. Kaufman:    Move for a mistrial.

The Court:   Denied.

T-565-567.

Q. You're telling this jury you know nothing about crack being distributed from 1841 Rodman; is that correct?

A. Nothing at all.

Q. You know nothing about prostitution activities being conducted from 1841 Rodman; is that correct?

A. Nothing at all.

T-575.

The government then suggested Mr. McKinley had even more priors than what was being discussed. In reviewing the PSR of Mr. McKinley the other prior felony convictions that Mr. McKinley had were more than ten years old and otherwise inadmissible. The following occurred on direct examination of Mr. McKinley:

Q. Because you're a crack dealer?

A. I sold crack, yes.

Q. You've been convicted of it.

A. Yes.

Q. Right? What was your sentence?

A.      Uhm, for selling crack?  Uhm, I don't – I don't think I even went – got a sentence.  I think I got probation or something for it.

Q.      You got probation for selling crack, that was your *last* conviction, in '09?

A.      You said my conviction for selling crack.

Q.      What was your conviction in '09, sir?

A.      My conviction in '09 for selling crack?  I don't have a conviction in '09 for selling crack.

Q.      Do you have a conviction in '09?

A.      Uh, yes.

Q.      What is that?

A.      Uhm, for cocaine?

T-646, 647. (Emphasis added.)

In summary, the government improperly heard about Mr. McKinley's other alleged crimes that were not inextricably intertwined and were not properly noticed under F.R.E. 404(b) including post arrest drug dealing, additional prostitution, and the possession of firearms.  This evidence was also inadmissible under F.R.E. 403.  The government also used this improper 403 and 404(b) evidence to impeach Gerry Viskocil on crimes for which he was never charged.   Based on the totality of the circumstances the convictions should be reversed and a new trial ordered.

WHEREFORE Mr. McKinley respectfully requests this motion be granted.

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed using the CM/ECF system on this 26th day of November, 2014.

Respectfully submitted,

s/Gennaro Cariglio Jr.
Gennaro Cariglio Jr.
10800 Biscayne Blvd.
Suite 900
Miami, FL 33161
(305) 899-0438
Florida Bar No.: 51985
Attorney for the Defendant